747 S.E.2d 774

**In the Interest of JUSTIN B., a Juvenile Under the Age of Seventeen, Appellant.**

**Appellate Case No. 2010–151466.**

**No. 27306.**

Supreme Court of South Carolina.

Heard Oct. 4, 2011.
Decided Aug. 28, 2013.
Rehearing Denied Oct. 2, 2013.

Pleicones, J., concurred in result only.

Appellate Defender Kathrine H. Hudgins, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Christina J. Catoe, all of Columbia, and Solicitor John Gregory Hembree, of Conway, for Respondent.

Chief Justice TOAL.

Justin B. (Appellant), a minor under seventeen years of age, challenges the active electronic monitoring (electronic monitoring) requirements of section 23–3–540 of the South Carolina Code. Section 23–3–540 requires that individuals convicted of certain sex-related offenses, including criminal sexual conduct with a minor in the first degree (CSC–First), submit to electronic monitoring for the duration of the time the individual is required to remain on the sex offender registry. S.C.Code Ann. § 23–3–540(A)–(H) (Supp.2012). An individual

found guilty of CSC–First is required to register as a sex offender bi-annually for life. *Id.* §§ 23–3–430, –460 (Supp. 2012). Section 23–3–540 also provides that ten years from the date electronic monitoring begins, an individual may petition the chief administrative judge of the general sessions court for the county in which the offender resides for an order of release from the monitoring requirements. *Id.* § 23–3–540(H). However, those persons convicted of CSC–First may not petition for this review. *Id.* Thus, these sex offenders must submit to monitoring for the duration of their lives. Appellant argues that, because he is a juvenile, this imposition constitutes cruel and unusual punishment in violation of the federal and state constitutions. We find electronic monitoring is not a punishment, and reject Appellant's claim. However, Appellant must be granted periodic judicial review to determine the necessity of continued electronic monitoring.

## FACTUAL/PROCEDURAL BACKGROUND

On May 3, 2009, Appellant's adoptive mother witnessed him sexually molest his adoptive sister and notified police. In August 2009, Appellant was indicted for CSC–First in violation of section 16–3–655(A)(1) of the South Carolina Code. S.C.Code Ann. § 16–3–655(A) (Supp.2012). Pursuant to a negotiated plea deal in which Appellant agreed to plead guilty if allowed to do so in family court, Appellant was brought before the family court on a juvenile petition in November 2009. Appellant admitted guilt and was subsequently adjudicated delinquent. The family court committed Appellant for an indeterminate period to the Department of Juvenile Justice, not to exceed Appellant's twenty-first birthday, and required Appellant to undergo counseling. The family court also ordered Appellant to register as a sex offender as required by section 23–3–460 of the South Carolina Code, and to comply with section 23–3–540's electronic monitoring requirements. *Id.* §§ 23–3–460, –540. Appellant appealed, and this Court certified the case pursuant to Rule 204(b), SCACR.

## ISSUE PRESENTED

Whether lifetime electronic monitoring pursuant to sections 23–3–400 and –540 of the South Carolina Code is unconstitu-

tional as a violation of the prohibition against cruel and unusual punishment under the Eight Amendment to the United States Constitution and Article I, Section 15 of the South Carolina Constitution when applied to a juvenile.

## STANDARD OF REVIEW

All statutes are presumed constitutional, and if possible, will be construed to render them valid. *Curtis v. State,* 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001). A statute will not be declared unconstitutional unless its repugnance to the constitution is clear beyond a reasonable doubt. *In re Lasure,* 379 S.C. 144, 147, 666 S.E.2d 228, 229 (2008). The party challenging the statute's constitutionality bears the burden of proof. *In re Treatment of Luckabaugh,* 351 S.C. 122, 135, 568 S.E.2d 338, 344 (2002).

## LAW/ANALYSIS

The Eighth Amendment to the United States Constitution provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII; *see also* S.C. Const. art. 1, § 15 ("Excessive bail shall not be required ... nor shall cruel, nor corporal, nor unusual punishment be inflicted."). Appellant does not argue that electronic monitoring itself is cruel and unusual, but that "the duration of lifetime electronic monitoring for a juvenile offender is so severe as to constitute a violation of the prohibition against cruel and unusual punishment." Our determination of whether the electronic monitoring provisions of section 23–3–540 constitute cruel and unusual punishment rests primarily on whether electronic monitoring constitutes a punishment.

### I. Civil Requirement or Criminal Punishment

We hold that Section 23–3–540's electronic monitoring requirement is a civil obligation similar to other restrictions the state may lawfully place upon sex offenders. *See, e.g., Smith v. Doe,* 538 U.S. 84, 93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding that the imposition of restrictive measures on sex offenders adjudged to be potentially dangerous is a legitimate non-punitive governmental objective); *In re Ronnie A.,* 355

S.C. 407, 409, 585 S.E.2d 311, 312 (2003) (finding lifelong sex offender registration does not implicate a liberty interest because it is non-punitive); *State v. Walls*, 348 S.C. 26, 30, 558 S.E.2d 524, 526 (2002) (holding sex offender registration non-punitive in purpose or effect and determining that sex offender registration did not constitute a criminal penalty).

The United States Supreme Court's analysis in *Smith v. Doe* is instructive on this point.

In that case, the respondents pled *nolo contendere* to child molestation charges and completed rehabilitative programs for sex offenders following their release from prison in 1990. *Smith*, 538 U.S. at 91, 123 S.Ct. 1140. In 1994, the Alaska State Legislature enacted the Alaska Sex Offender Registration Act (the Act). *Id.* at 89, 123 S.Ct. 1140. The Act required all sex offenders to register with law enforcement authorities and provide periodic verification of the information submitted at the time of registration. *Id.* at 90–91, 123 S.Ct. 1140. The Act applied to sex offenders convicted prior to the Act's passage. *Id.* The respondents challenged the Act as an ex post facto violation. *Id.* The United States District Court for the District of Alaska rejected the respondents' claim, granting summary judgment to the state. However, the United States Court of Appeals for the Ninth Circuit determined that although the legislature intended the Act "to be a non-punitive, civil regulatory scheme," the Act's actual effects were punitive. *Id.* at 91–92, 123 S.Ct. 1140.

The Supreme Court disagreed, beginning its inquiry by determining the legislature's objective from the Act's text and structure. *Id.* at 92–93, 123 S.Ct. 1140 ("Whether a statutory scheme is civil or criminal 'is first of all a question of statutory construction . . . . A conclusion that the legislature intended to punish would satisfy an ex post facto challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.") (citations omitted).

The Supreme Court observed that the Alaska State Legislature expressed the Act's objective in the statutory test itself, finding that "sex offenders pose a high risk of offending," and identifying the public's protection as the Act's "primary governmental interest." *Id.* at 93, 123 S.Ct. 1140. Thus, the

Supreme Court held, "[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil ... scheme designed to protect the public from harm." *Id.* (citing *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). Additionally, the Supreme Court noted that the Act did not require any procedural safeguards associated with the criminal process and contemplated "distinctly civil procedures." *Id.* at 96, 123 S.Ct. 1140 (concluding that the Alaska State Legislature intended to create a civil, non-punitive regime).

The Supreme Court next focused its inquiry on the Act's actual effects, and relied principally on the factors noted in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963),[1] finding:

> The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a non-punitive purpose; or is excessive with respect to this purpose.

*Smith*, 538 U.S. at 97, 123 S.Ct. 1140.

The respondents argued that the Act's provisions resembled shaming punishments of the colonial period. *Id.* The Supreme Court disagreed, observing that

> [p]unishments such as whipping, pillory, and branding inflicted physical pain and staged a direct confrontation between the offender and the public. Even punishments that

---

1. "The punitive nature of the sanction here is evident under the tests traditionally applied to determine whether an Act of Congress is penal or regulatory in character, even though in other cases this problem has been extremely difficult and elusive of solution. **Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned** are all relevant to the inquiry, and may often point in differing directions." *Mendoza–Martinez*, 372 U.S. at 168–69, 83 S.Ct. 554 (emphasis added).

lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information. They either held the person up before his fellow citizens for face-to-face shaming or expelled him from the community.

*Id.* at 98, 123 S.Ct. 1140. However, the Court found that the Act's associated stigma resulted not from public display for ridicule, but instead from the dissemination of accurate information from a criminal, and generally public, record. *Id.* ("Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused."). Moreover, the Act imposed no physical restraint, and thus did not resemble imprisonment. *Id.* at 99–100, 123 S.Ct. 1140.

The Ninth Circuit concluded that the Act contained retributive registration obligations, thus promoting a traditional aim of punishment. *Id.* at 102, 123 S.Ct. 1140. Additionally, the state conceded that the Act might deter future crimes. *Id.* However, the Supreme Court found neither point required a determination that the Act constituted a punishment. *Id.* First, a governmental program may deter crime without imposing punishment, and to find that the mere presence of a deterrent purpose rendered a sanction "criminal," would severely undermine the state's ability to engage in effective regulation. *Id.* Second, the Act's reporting requirements related to the danger of recidivism—consistent with a regulatory objective. *Id.*

The Supreme Court found the Act's rational connection to a non-punitive purpose the "most significant" factor in determining that the Act's overall effects were non-punitive:

As the Court of Appeals acknowledged, the Act has a legitimate non-punitive purpose of "public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y]". . . . A statute is not deemed punitive simply because it lacks a close or perfect fit with the non-punitive aims it seeks to advance. The imprecision [the

respondents] rely upon does not suggest that the Act's non-punitive purpose is a "sham or mere pretext."
*Id.* at 102–03, 123 S.Ct. 1140 (citation omitted).

Finally, the Supreme Court determined that the Act was not excessive in relation to its regulatory purpose. The Ninth Circuit's analysis of this issue found the Act excessive because it applied to all convicted sex offenders without regard to future dangerousness and placed no limitation on the number of persons with access to the information. *Id.* at 103, 123 S.Ct. 1140. The Supreme Court viewed neither reason persuasive, finding first that the legislature made reasonable categorical judgments regarding the "high" rate of recidivism among convicted sex offenders, and second, that the notification system was passive in nature as it required an individual to seek access to the information. *Id.* at 104–05, 123 S.Ct. 1140 ("The excessiveness inquiry of our ex post facto jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy.").

Only the "clearest proof" will suffice to override legislative intent and transform a previously denominated civil remedy into a criminal penalty. *Id.* at 92, 105–06, 123 S.Ct. 1140. In *Smith,* the respondents failed to establish that the effects of the Act negated the Alaska State Legislature's intent to create a civil regulatory scheme. *Id.* at 105–06, 123 S.Ct. 1140.

In *Doe v. Bredesen,* 507 F.3d 998 (6th Cir.2007), the United States Court of Appeals for the Sixth Circuit relied on the reasoning of *Smith* in its analysis of registration and electronic monitoring statutes passed by the Tennessee General Assembly.

In that case, the defendant, Doe, pled guilty to attempted aggravated kidnapping and two counts of sexual battery by an authority figure. *Id.* at 1000. Following his conviction and sentence, the legislature passed the Tennessee Serious and Violent Sex Offender Monitoring Pilot Project Act (the Monitoring Act) which authorized the Tennessee Board of Probation and Parole to enroll a convicted sex offender into an electronic monitoring program. *Id.* Doe claimed that the imposition of electronic monitoring constituted an ex post facto violation. *Id.*

In enacting the law, the legislature stated its intent to utilize the latest technology to monitor and track serious and violent sex offenders. *Id.* at 1004. Additionally, the legislature cited statistics regarding the abnormally high rates of recidivism among sex offenders and law enforcement's ability to use electronic monitoring to narrow ongoing investigations to only those sex offenders that could be linked to the crime. *Id.* Similar to the Supreme Court's decision in *Smith,* the Sixth Circuit found that this purpose evinced an intent to create a civil scheme designed to protect the public. *Id.* (citing *Smith,* 538 U.S. at 93, 123 S.Ct. 1140).

In analyzing the statute's practical effects, the Sixth Circuit relied on the factors the Supreme Court utilized in *Smith.* *Id.* (quoting *Smith,* 538 U.S. at 97, 123 S.Ct. 1140). According to the Sixth Circuit, the Monitoring Act's registration, reporting, and surveillance components did not constitute an affirmative disability or restraint:

> The [Monitoring Act] does not increase the length of incarceration for covered sex offenders, nor ... prevent them from changing jobs or residences or traveling to the extent otherwise permitted by their conditions of parole or probation. Perhaps most significantly, the Supreme Court held recently, in sustaining the Alaska Sex Offender Registration Act against an ex post facto challenge, that lifetime registration and monitoring of sexual offenders is "less harsh" than other sanctions that the Court has historically considered non-punitive, such as revocation of a medical license, preclusion from work as a banker, and preclusion from work as a union official.

*Id.* at 1005. The court also rejected the notion that the wearing of an electronic monitoring device served as a "catalyst for public ridicule," finding:

> The device that Doe must wear is relatively unobtrusive, measuring only 6 inches by 3.25 inches by 1.75 inches and weighing less than a pound. In its size, shape, and placement (hooked to a belt), it appears very similar to a walkietalkie or other nondescript electronic device. Furthermore, we have every reason to believe that the dimensions of the system, while not presently conspicuous, will only become smaller and less cumbersome as technology progresses. We similarly cannot agree that the device's appearance

would suggest to the casual observer that the wearer is a criminal, let alone a sex offender.... However, even assuming the public would recognize the device as a criminal monitor, there is no evidence to suggest an observer would understand the wearer to be a sex offender. These devices can be utilized in a variety of contexts, such as pretrial monitoring and work release, and are, in fact, advertised for use in such situations. Indeed, the dissent can only point to a single incident wherein a member of the public recognized the device as a monitor, and, even then, there was no evidence to suggest that the observer knew the device to be one that monitored sex offenders, as opposed to criminals generally.

*Id.* The Sixth Circuit further found that, analogous to the provision analyzed in *Smith,* the deterrent aspects of the Monitoring Act did not negate the overall remedial and regulatory nature of the statute, and that deterrence could serve both criminal and civil goals. *Id.*

The court also noted the legislature's citation of government statistics regarding sex offenders' tendency to reoffend. According to the Sixth Circuit, these statistics supported the notion that the legislature could rationally conclude that sex offenders presented an unusually high risk of recidivism, and that stringent electronic monitoring could both reduce that risk and protect the public without further "punishing" sex offenders. *Id.* at 1006. Finally, the court held that the Monitoring Act was not excessive in relation to its regulatory purpose. *Id.* The court rooted its reasoning on this point in the guiding principle that the excessiveness inquiry is not an exercise in determining whether the legislature made the best choice, but instead, whether the means chosen are reasonable in light of the non-punitive objective. *Id.* The court concluded that the chosen means, for example, ensuring an offender does not enter a prohibited location, supported the finding that those means were reasonable. *Id.* at 1007.

Thus, because of Doe's failure to demonstrate the Monitoring Act's punitive nature, his ex post facto claim necessarily collapsed. *Id.* at 1007–08.

The decisions in *Smith* and *Bredesen* provide an informative guide for examining whether electronic monitoring of sex

offenders constitutes punishment for purposes of a constitutional analysis. Additionally, the United States Court of Appeals for the Fourth Circuit's decision in *United States v. Under Seal*, 709 F.3d 257 (4th Cir.2013), offers an enlightening complement with regard to the specific juvenile context.

In *Under Seal*, the appellant resided with his mother, an active duty service-member, his stepfather, and two half-sisters ages ten and six. *Id.* at 259. The appellant's mother reported to the United States Naval Criminal Investigation Service (NCIS) that the appellant behaved in a sexually inappropriate manner with his two half-sisters, and an investigation confirmed that the appellant sexually molested both girls. *Id.* The appellant admitted to the allegations in the United States District Court for the District of South Carolina. *Id.* The district court adjudicated the appellant delinquent and sentenced him to incarceration as well as a period of juvenile delinquent supervision not to exceed his twenty-first birthday. *Id.* at 259–60. The district court also included a special condition requiring the appellant to comply with the mandatory reporting requirements of the Sex Offender Registration and Notification Act (the SORNA).[2] *Id.* at 260.

The SORNA's comprehensive national registration system requires that sex offenders "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." *Id.* at 260–61. The offender must "appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry." *Id.* at 261. Each jurisdiction is required to make public the contents of its sex offender registry, including each registrant's name, address, photograph, criminal history, and applicable probationary status. *Id.*

On appeal, the appellant contended, *inter alia*, that, because of his juvenile status, the SORNA's registration requirements violated the Eighth Amendment's prohibition on cruel and

---

**2.** In 2006, Congress enacted the SORNA as part of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16901 *et seq.*, "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators," and establish a comprehensive national system for the registration of those offenders. 42 U.S.C. § 16901.

unusual punishment. The Fourth Circuit analyzed the SOR-NA's possible punitive effect utilizing the "two-part" test the United States Supreme Court explained in *Smith, supra:*

If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and non-punitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.

*Id.* at 263 (quoting *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 and relying on the seven factors discussed in *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554).

The Fourth Circuit concluded that the SORNA's language, legislative history, and place of codification all indicated Congressional intent to create a non-punitive regulatory framework to "keep track of sex offenders." *Id.* at 264. Further, the Fourth Circuit held that an analysis of the relevant *Mendoza–Martinez* factors compelled the conclusion that the SORNA's application to the appellant did not have a punitive effect.

According to the Fourth Circuit, the SORNA imposed no physical restraint, and does not require changes in employment or residence, but merely required that the appellant report those changes. *Id.* at 265 ("Although [the appellant] is required under the SORNA to appear periodically in person to verify his information ... this is not an affirmative disability or restraint.... Appearing in person may be more inconvenient, but requiring it is not punitive." (citing *United States v. W.B.H.,* 664 F.3d 848, 857 (11th Cir.2011), *cert. denied, W.B.H. v. United States,* —— U.S. ——, 133 S.Ct. 524, 184 L.Ed.2d 339 (2012))).

Despite the Supreme Court's ruling in *Smith* that registration requirements have not been regarded as punishment, the appellant in *Under Seal* argued that because records in juvenile criminal cases are not made public, disseminating that information must be punitive. *Id.* The Fourth Circuit rejected this argument, holding:

A court, however, may permit the inspection of records relating to a juvenile delinquency proceeding under some circumstances. Further, the Supreme Court has held that "[o]ur system does not treat dissemination of truthful infor-

mation in furtherance of a legitimate governmental objective as punishment."

*Id.* (quoting *Smith,* 538 U.S. at 98, 123 S.Ct. 1140). Third, the Fourth Circuit concluded that the SORNA did not promote the traditional aims of punishment, relying wholly on the Supreme Court's conclusion in *Smith* that "any number of governmental programs might deter crime without imposing punishment." *Id.* (citing *Smith,* 538 U.S. at 102, 123 S.Ct. 1140). The court next determined that SORNA contained a rational connection to a legitimate, non-punitive purpose— public safety—which is advanced by notifying the public to the risk of sex offenders in their community. *Id.* ("This according to the Supreme Court, is the 'most significant' factor in determining whether a sex offender registration system is non-punitive.").

Finally, the Fourth Circuit found that because the SORNA applied to a specific and limited class of juvenile offenders, the regulatory scheme was not excessive with respect to the SORNA's non-punitive purpose. *Id.* at 266. According to the National Guidelines for Sex Offender Registration and Notification, the SORNA does not require

> registration for juveniles adjudicated delinquent for all sex offenses for which an adult sex offender would be required to register, but rather requires registration only for a defined class of older juveniles who are adjudicated delinquent for committing particularly serious sexually assaultive crimes.

*Id.* (citation omitted).

Thus, the Fourth Circuit held the SORNA's registration requirements, as applied to the appellant, did not violate the Eighth Amendment's ban on cruel and unusual punishment. *Id.* (" 'The clearest proof' is lacking, as examination of the *Mendoza–Martinez* factors makes clear.").

The *Smith, Bredesen,* and *Under Seal* decisions, when taken together, provide the ideal lens through which to review the electronic monitoring scheme Appellant challenges.

## II.  Appellant's Claim

### A.  Legislative Intent

Section 23–3–400 of the South Carolina Code outlines the purpose of the state's sex offender registration and

electronic monitoring statutory regime. The General Assembly specified that the intent of the article is to "promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens." S.C.Code Ann. § 23–3–400 (2007). Section 23–3–400 provides that, statistically, sex offenders pose a high risk of re-offending and a lack of information about sex offenders impairs law enforcement's ability to "protect communities, conduct investigations, and apprehend offenders." *Id.* Nothing on the face of section 23–3–400 suggests that the General Assembly sought to create anything other than a civil scheme designed to protect the public from harm, or that the electronic monitoring requirement is incompatible with prior judicial determinations regarding restrictions placed on sex offenders. *Cf. Smith,* 538 U.S. at 93, 123 S.Ct. 1140 ("Nothing on the face of the statute suggests that the legislature sought to create anything other than a civil . . . scheme designed to protect the public from harm."); *Bredesen,* 507 F.3d at 1000 (citing the legislature's determination to utilize the technology to monitor violent sex offenders and narrow ongoing investigations to those sex offenders that could be linked to the crime evinced the legislature's intent to create a civil scheme designed to protect the public); *Under Seal,* 709 F.3d at 264 (concluding that the statute's language, legislative history, and place of codification all indicated Congressional intent to create a non-punitive regulatory framework to "keep track of sex offenders").

### B.  *Application of the Mendoza–Martinez factors*

Application of the *Mendoza–Martinez* factors demonstrates that in addition to the fact that the General Assembly intended section 23–3–540 as a civil scheme for the protection of the public, the statute is also not so punitive in effect as to negate the intention to deem it civil. *See, e.g., Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) ("[W]e will reject the legislature's manifest intent only where a party challenging the statute provides the 'clearest proof' that the 'statutory scheme is so punitive in purpose or effect as to negate [the State's] intention' to deem it 'civil.' ") (citation omitted).

Electronic monitoring is not similar to those sanctions historically regarded as punishment. As the Supreme Court observed in *Smith,* historical punishments involved more than

the collection of information, or the protection of the public, and held the individual "up before his fellow citizens for face-to-face shaming or expelled him from the community." *Smith,* 538 U.S. at 98, 123 S.Ct. 1140.

Appellant failed to provide the Court with any evidence that the electronic monitoring device is immediately recognizable to the public, or would cause him to be identified as a sex offender to the exclusion of other reasonable and legitimate uses for electronic devices. Moreover, the Supreme Court has held that the lifetime registration requirement for sex offenders is non-punitive. *Id.* at 105–06, 123 S.Ct. 1140. Electronic monitoring does not provide the same broad public dissemination of a sex offender's status. Thus, it does not logically follow that this Court can deem this prophylactic and non-invasive mechanism punitive. *Cf. Bredesen,* 507 F.3d at 1005 ("However, even assuming the public would recognize the device as a criminal monitor, there is no evidence to suggest an observer would understand the wearer to be a sex offender.").

Appellant may face adverse consequences from his inclusion in the sex offender registry or because someone may infer from an electronic monitoring device that he is a sex offender. However, in contrast to historical shaming punishments, any resulting stigma is not a basic component of the regulatory scheme. *Smith,* 538 U.S. at 99, 123 S.Ct. 1140. Any unintended humiliation is a collateral consequence of a valid regulation. *Id.*

Section 23–3–540 does not impose an affirmative disability or restraint. Appellant is not subject to any physical restraint, nor does wearing an electronic monitor "resemble imprisonment," the archetypal affirmative disability. *See Bredesen,* 507 F.3d at 1010; *see also Smith,* 538 U.S. at 100, 123 S.Ct. 1140. Moreover, requiring Appellant to submit to non-invasive electronic monitoring is less restrictive than occupational debarment, which is non-punitive. *Smith,* 538 U.S. at 100, 123 S.Ct. 1140 (citing *Hudson v. United States,* 522 U.S. 93, 99–105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (upholding sanctions forbidding further participation in the banking industry)).

There is no evidence to demonstrate that section 23–3–540 increases the length of incarceration for sex offenders, pre-

vents them from changing jobs or residences, or traveling to the extent otherwise permitted by their status as a sex offender. *Bredesen,* 507 F.3d at 1005. Therefore, section 23–3–540's electronic monitoring requirement does not impose an affirmative disability or restraint.

■ The commonly accepted traditional aims of punishment are retribution and deterrence. *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. Section 23–3–540 does not promote the traditional aims of punishment to the exclusion of the provision's civil goals. Though deterrence may serve criminal goals, the principle may also support civil goals. *Hatton v. Bonner,* 356 F.3d 955, 965 (9th Cir.2004). Section 23–3–540's electronic monitoring requirements may deter sex offenders from re-offending and thus support the civil purposes of protecting communities and aiding law enforcement in conducting investigations. Therefore, it is possible for deterrence to serve both criminal and civil goals. Moreover, as the Supreme Court noted in *Smith,* the mere presence of a deterrent purpose does not render a sanction "criminal." *Smith,* 538 U.S. at 102, 123 S.Ct. 1140 (citation omitted).

■ Section 23–3–540's electronic monitoring scheme bears a clear and rational connection to a non-punitive purpose. The General Assembly expressly stated that the overall purpose of the registration and monitoring scheme is to "promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens," and to "protect communities, conduct investigations, and apprehend offenders." S.C.Code Ann. § 23–3–400. Statistical evidence demonstrates that sex offenders pose a high risk of re-offending. *Id.* Thus, it is rational to conclude the continuous monitoring of these offenders supports the General Assembly's valid purpose of aiding law enforcement in the protection of the community. *See Smith,* 538 U.S. at 102, 123 S.Ct. 1140 ("The question is whether the regulatory means chosen are reasonable in light of the non-punitive objective."). Perhaps the General Assembly could have created a scheme more narrow in scope and still accomplished its non-punitive purpose. Perhaps it could not have. In any event, however, a statute is not deemed punitive due to the absence of a "close or perfect" fit with its non-punitive purpose. *Id.* at 103, 123 S.Ct. 1140.

The purpose of the registration and electronic monitoring scheme in the instant case is clear—to provide for the safety and welfare of the State's citizens, and eliminate information deficits which hinder law enforcement in their apprehension of those offenders. *See* S.C.Code Ann. § 23–3–400. These goals are a legitimate exercise of the State's police power, and Appellant fails to demonstrate that these objectives are mere pretext.

Finally, there is no basis to conclude that section 23–3–540's electronic monitoring requirement is excessive in relation to its legitimate non-punitive purpose.

In *McKune v. Lile,* 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the Supreme Court recognized that sex offenders pose a serious and increasing threat. When convicted sex offenders reenter society "they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id.* at 33, 122 S.Ct. 2017 (citation omitted). Moreover, sexual assaults disproportionately affect juveniles. *Id.* Nearly forty percent of imprisoned violent sex offenders stated that their victims were twelve years or younger. *Id.*

■■ Nevertheless, a sex offender subject to section 23–3–540 is not required to comply with the provision's requirements any longer than they are required to register as a sex offender. Additionally, in light of our decision in *State v. Dykes,* 403 S.C. 499, 744 S.E.2d 505 (2013), Appellant is entitled to judicial review of his continued compliance with section 23–3–540's electronic monitoring requirements. In *Dykes,* this Court found section 23–3–540(H) unconstitutional to the extent that the provision imposed lifetime electronic monitoring with no opportunity for judicial review. *Id.* at 503, 744 S.E.2d 505. Moreover, the Court held that the appellant, and other similarly situated sex offenders, must comply with the monitoring requirement mandated by section 23–3–540(C), but are entitled to "avail themselves of the section 23–3–540(H) judicial review process as outlined for the balance of the offenses numerated in section 23–3–540(G)." *Id.* at 510, 744 S.E.2d 505. Thus, Appellant may petition for judicial review ten years after the commencement of electronic monitoring. This fact only compounds the reasoning supporting the view that section 23–3–540 is not excessive.

## CONCLUSION

Application of the above factors demonstrates that section 23–3–540 is a civil remedy. Moreover, the practical effects of the remedy are non-punitive.[3] In enacting section 23–3–540, the General Assembly reasonably determined that advances in technology should be brought to bear in protecting some of society's most vulnerable individuals from some of society's most violent criminals.[4]

Thus, based on the foregoing, and in light of this Court's decision in *State v. Dykes, supra,* the family court's order is

**AFFIRMED AS MODIFIED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.

---

3. Because we find that this sanction is a civil remedy, we need not consider whether electronic monitoring constitutes cruel and unusual punishment, regardless of the age of the offender. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding that appellate courts need not discuss remaining issues when determination of a prior issue is dispositive).

4. *Cf. United States v. Kebodeaux,* —— U.S. ——, 133 S.Ct. 2496, 2503, 186 L.Ed.2d 540 (2013) ("Congress could reasonably conclude that [civil] registration requirements applied to federal sex offenders after their release can help protect the public from those federal sex offenders and alleviate public safety concerns.") (alteration added).