# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Dennis J. Powell, Jr., Respondent,

v.

Mark Keel, Chief, State Law Enforcement Division, and The State of South Carolina, Appellants.

Appellate Case No. 2019-001063

---

Appeal From Richland County
G. Thomas Cooper, Jr., Circuit Court Judge

---

Opinion No. 28033
Heard November 19, 2020 – Filed June 9, 2021

---

## AFFIRMED AS MODIFIED IN PART AND REVERSED IN PART

---

Adam L. Whitsett and Paul Thomas Ahearn, III, both of the South Carolina Law Enforcement Division; and Attorney General Alan McCrory Wilson and Assistant Attorney General Harley Littleton Kirkland, all of Columbia, for Appellants.

Jonathan Edward Ozmint, of The Ozmint Firm, LLC, of Columbia, and Elise Freeman Crosby, of Crosby Law Firm, LLC, of Georgetown, for Respondent.

Blake Terence Williams, Amber Modestine Steele Hendrick, and Daniel J. Westbrook, all of Nelson Mullins

Riley & Scarborough, LLP, of Columbia, for Amicus Curiae South Carolina Office of Appellate Defense.

_____

**CHIEF JUSTICE BEATTY:** This appeal arises from the circuit court's grant of summary judgment in favor of Dennis Powell, Jr. ("Respondent") on his claims challenging the internet publication and lifetime duration of his mandated registration as a sex offender under the South Carolina Sex Offender Registry Act ("SORA"), S.C. Code Ann. §§ 23-3-400 to -555 (2007 & Supp. 2020). The circuit court held SORA's lifetime registration requirement is punitive under the Eighth Amendment and violates Respondent's rights to due process and equal protection. The court also determined SORA does not permit publication of the State's sex offender registry on the internet. Mark Keel, Chief of the State Law Enforcement Division ("SLED"), and the State of South Carolina (collectively, "Appellants") appeal the circuit court's decision. We hold SORA's lifetime registration requirement is unconstitutional absent any opportunity for judicial review to assess the risk of re-offending. We further hold subsection 23-3-490(E) permits dissemination of the State's sex offender registry information on the internet. Accordingly, we affirm as modified in part and reverse in part.

## I. FACTS

On February 23, 2008, Respondent was arrested for criminal solicitation of a minor under section 16-15-342 of the South Carolina Code (2015) for engaging in anonymous internet chatroom conversations, which were graphically sexual in nature, with an undercover police officer posing as a twelve-year-old girl as part of an internet sting operation. In their final conversation, Respondent and the "teenage girl" arranged to meet at a skating rink in Lexington. Thereafter, he drove by the meeting place, was pulled over by law enforcement at a traffic stop, and was subsequently arrested.

On December 1, 2008, Respondent was indicted for having "knowingly through the Internet contact[ed] and communicate[d] with a person . . . whom he reasonably believed to be [a] twelve year-old girl, for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity." On April 2, 2009, he pleaded guilty to the indictment and was thereafter sentenced to two years' imprisonment suspended to one year of probation. At sentencing, the court notified Respondent that he would be required to register as a sex offender under SORA, which mandates lifetime registration for sex offenses, including criminal solicitation of a minor. *See* S.C.

Code Ann. §§ 23-3-430(A), (C)(21), -460(A) (2007 & Supp. 2020). Respondent did not file an appeal from his conviction or an application for post-conviction relief.

Respondent has registered as a sex offender since his sentencing in 2010 and has not been arrested for any offense since that time. In 2011, Respondent successfully completed his probationary sentence as well as outpatient psychiatric treatment consisting of sixty hours of sex offender group therapy. Respondent was assessed by Dr. William Burke, a licensed professional counselor, and Dr. Thomas Martin, a licensed psychologist, both of whom determined he has a low risk of recidivism.

On November 21, 2016, Respondent filed a petition in the circuit court for a declaratory judgment, claiming SORA does not permit publication of the State's sex offender registry on the internet, and the lifetime duration of his sex offender registration constitutes excessive punishment in violation of the Eighth Amendment of the United States Constitution and article I, section 15 of the South Carolina Constitution, deprives him of due process and equal protection, and warrants equitable relief in the form of his removal from the registry. After cross-motions for summary judgment by the parties, the circuit court held a hearing and granted Respondent's motion on all claims. Appellants filed a motion to alter or amend the judgment, which the circuit court considered under Rule 59(e), SCRCP, and denied. Thereafter, Appellants appealed to the court of appeals, which transferred the case to this Court pursuant to Rules 204(a) and 203(d)(1)(A)(ii), SCACR.

## II. STANDARD OF REVIEW

"This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001). "A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999). The party challenging the validity of a statute bears the burden of proving it is unconstitutional. *See Knotts v. S.C. Dep't of Nat. Res.*, 348 S.C. 1, 6, 558 S.E.2d 511, 513 (2002) (noting the appellant bore the burden of proving the statute unconstitutional).

"Determining the proper interpretation of a statute is a question of law, which this Court reviews de novo." *Ferguson Fire & Fabrication, Inc. v. Preferred Fire Prot., L.L.C.*, 409 S.C. 331, 339, 762 S.E.2d 561, 565 (2014). Thus, we may

interpret statutes "without any deference to the court below." *Brock v. Town of Mt. Pleasant*, 415 S.C. 625, 628, 785 S.E.2d 198, 200 (2016) (quoting *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)).

## III. DISCUSSION

In 1994, the South Carolina General Assembly enacted our State's sex offender registry law, SORA, S.C. Code Ann. §§ 23-3-400 to -555 (2007 & Supp. 2020). Such laws are commonly referred to as "Megan's Laws," named after seven-year-old Megan Kanka from New Jersey, who was sexually assaulted and murdered in 1994 by a neighbor who had prior convictions for sex crimes against children. *See Smith v. Doe*, 538 U.S. 84, 89 (2003) (discussing the origins of "Megan's Law" and characterizing Alaska's sex offender registration act as "Megan's Law"); *see also* Wayne A. Logan, *Database Infamia: Exit from the Sex Offender Registries*, 2015 Wis. L. Rev. 219, 220 (2015) (noting sex offender registration laws are colloquially known as "Megan's Laws"). The widely publicized crime prompted state legislatures across the country to pass laws mandating registration of sex offenders. *See Hendrix v. Taylor*, 353 S.C. 542, 547, 579 S.E.2d 320, 322 (2003) (observing the movement to enact sex offender statutes arose following Megan's murder); *see also People v. Ross*, 646 N.Y.S.2d 249, 250 (Sup. Ct. 1996) (noting "[e]very state requires sex offenders to register").

In South Carolina, SORA requires any person, regardless of age, who has been convicted of an enumerated crime, including criminal solicitation of a minor, to register as a sex offender. S.C. Code Ann. § 23-3-430(A), (C)(21) (2007 & Supp. 2020). The Act also provides judges with discretion to order, as a condition of sentencing, a person convicted of an offense not listed in the statute to be included in the sex offender registry if good cause is shown by the solicitor. *Id.* § 23-3-430(D). Moreover, subsection 23-3-460(A) generally mandates that a person required to register as a sex offender must do so biannually for life. *Id.* § 23-3-460(A). Registrants are required to register in person at the sheriff's department and must provide information as prescribed by SLED. *Id.* §§ 23-3-450, -460(A). Any person who fails to register or provide required notifications may be subject to criminal prosecution. *Id.* § 23-3-470.

Notably, SORA does not provide any judicial review for registrants to demonstrate their individual risk of recidivism and seek removal from the registry. Instead, a person may only be removed from the registry under the following circumstances: "the person's adjudication, conviction, guilty plea, or plea of nolo contendere for an offense listed in subsection (C) was reversed, overturned, or

vacated on appeal and a final judgment has been rendered"; the person receives a pardon for the offense requiring registration and it is "based on a finding of not guilty"; or the person is granted a petition for a writ of habeas corpus or a motion for a new trial, a new trial is ordered, and the person is acquitted. *Id.* § 23-3-430(E)–(G). The complete absence of judicial review under South Carolina's legislative scheme is the most stringent in the country. *See* Logan, *supra*, at 225 (noting "South Carolina takes the most extreme position" with respect to the possibility of removal from its sex offender registry); Restoration of Rights Project, *50-State Comparison: Relief from Sex Offender Registration Obligations*, Collateral Consequences Resource Center (updated Nov. 2019), https://ccresourcecenter.org/state-restoration-profiles/50-state-comparison-relief-from-sex-offender-registration-obligations/ (compiling relief from registration provisions in every state); *see also Doe v. Dep't of Pub. Safety*, 444 P.3d 116, 135–36 (Alaska 2019) (noting "[a] majority of states now provide for individualized risk assessment hearings under which registrants . . . can be relieved of registration obligations").

Here, Appellants contend the circuit court erred in finding SORA's lifetime registration requirement violates Respondent's due process rights because it does not afford him the opportunity for judicial review. Specifically, they argue this Court has conclusively rejected prior due process claims under SORA. In *Hendrix v. Taylor*, 353 S.C. 542, 552, 579 S.E.2d 320, 325 (2003), we considered whether requiring an out-of-state sex offender to register in South Carolina "violated his due process right[s] because it deprived him of a liberty interest without a hearing." We held because "registering as a sex offender is a non-punitive imposition[,] . . . it cannot constitute a deprivation of a constitutionally protected liberty interest." *Id.* Relying on *Hendrix*, we reached the same conclusion with respect to juvenile sex offenders. *See In re Ronnie A.*, 355 S.C. 407, 409–10, 585 S.E.2d 311, 312 (2003) (holding registration of sex offenders, including juveniles, is a non-punitive imposition that is rationally related to the legislature's intent). Under this precedent, Appellants argue Respondent has no viable due process claim.

In contrast, Respondent contends SORA's lifetime registration requirement implicates protected liberty interests similar to those recognized by this Court in *State v. Dykes*, 403 S.C. 499, 744 S.E.2d 505 (2013). In that case, we considered a Fourteenth Amendment due process challenge to the lifetime duration of SORA's satellite monitoring requirement. *Id.* at 502, 744 S.E.2d at 507 (citing S.C. Code Ann. § 23-3-540(C), (H) (2007 & Supp. 2020)). We determined that "lifetime imposition of satellite monitoring implicates a protected liberty interest to be free from permanent, unwarranted governmental interference." *Id.* at 506, 744 S.E.2d at 509. Applying rational basis review, we held the initial mandatory imposition of

satellite monitoring is constitutional because it is rationally related to the General Assembly's stated purpose in section 23-3-400 (2007 & Supp. 2020). *Id.* at 507–08, 744 S.E.2d at 510. However, we also concluded that "it is unconstitutional to impose lifetime satellite monitoring with no opportunity for judicial review" because the absence of such opportunity to assess a risk of re-offending "is arbitrary and cannot be deemed rationally related to the legislature's stated purpose of protecting the public from those with a high risk of re-offending." *Id.* at 508–09, 744 S.E.2d at 510.

Similarly, we agree with Respondent that SORA's lifetime registration requirement without judicial review violates due process. The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* S.C. Const. art. I, § 3 (providing no person shall "be deprived of life, liberty, or property without due process of law"). Courts must "ensure[] that legislation which deprives a person of a life, liberty, or property right have, at a minimum, a rational basis, and not be arbitrary . . . ." *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 140, 568 S.E.2d 338, 346 (2002). When a fundamental right is not implicated, we require the law to be "reasonably designed to accomplish its purposes." *State v. Hornsby*, 326 S.C. 121, 125–26, 484 S.E.2d 869, 872 (1997). We hold the lifetime imposition of sex offender registration implicates a protected liberty interest similar to the one we recognized in *Dykes*. Therefore, we must determine whether the requirement "bears a reasonable relationship to any legitimate interest of government." *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 430, 593 S.E.2d 462, 470 (2004).

Our General Assembly has outlined the purpose of the State's sex offender registration provisions in section 23-3-400 as follows:

> The intent of this article is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens. Notwithstanding this legitimate state purpose, these provisions are not intended to violate the guaranteed constitutional rights of those who have violated our nation's laws.

> The sex offender registry will provide law enforcement with the tools needed in investigating criminal offenses. Statistics show that sex offenders often pose a high risk of re-offending. Additionally, law enforcement's efforts to protect communities, conduct investigations, and apprehend offenders who commit sex offenses are impaired by the

> lack of information about these convicted offenders who live within the
> law enforcement agency's jurisdiction.

S.C. Code Ann. § 23-3-400 (2007 & Supp. 2020). This Court has previously recognized the State's legitimate interest in requiring sex offender registration. *See In re Justin B.*, 405 S.C. 391, 408, 747 S.E.2d 774, 783 (2013) (characterizing the goals of SORA's registration scheme as "a legitimate exercise of the State's police power"); *Hendrix*, 353 S.C. at 550, 579 S.E.2d at 324 (noting that "classifying Appellant as a sex offender is reasonably related to the legitimate state purpose of protecting the public and aiding law enforcement in limiting the risk that sex offenders pose to communities"); *State v. Walls*, 348 S.C. 26, 31, 558 S.E.2d 524, 526 (2002) (holding the General Assembly's intent in enacting SORA was "to protect the public from those sex offenders who may re-offend and to aid law enforcement in solving sex crimes"). We find the initial mandatory imposition of sex offender registration satisfies the rational relationship test in light of the General Assembly's stated purpose. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) (finding due process does not require a pre-deprivation hearing where the registry requirement is based on the fact of previous conviction); *cf. Dykes*, 403 S.C. at 508, 744 S.E.2d at 510 (holding the initial mandatory imposition of satellite monitoring satisfies the rational relationship test).

Notwithstanding this finding, we hold SORA's lifetime registration requirement without any opportunity for judicial review to assess the risk of re-offending is arbitrary and cannot be deemed rationally related to the legislature's stated purpose of protecting the public from those with a high risk of re-offending. Indeed, "a likelihood of re-offending lies at the core of South Carolina's civil statutory scheme." *Dykes*, 403 S.C. at 507, 744 S.E.2d at 510; *see* S.C. Code Ann. § 23-3-400 (2007 & Supp. 2020) ("Statistics show that sex offenders often pose a high risk of re-offending."). However, the lifetime inclusion of individuals who have a low risk of re-offending renders the registry over-inclusive and dilutes its utility by creating an ever-growing list of registrants that is less effective at protecting the public and meeting the needs of law enforcement. *See State v. Letalien*, 985 A.2d 4, 30 (Me. 2009) (Silver, J., concurring) (noting "the catch-all scope of the [sex offender registration] statute's application dilutes its utility"); Elizabeth Reiner Platt, *Gangsters to Greyhounds: The Past, Present, and Future of Offender Registration*, 37 N.Y.U. Rev. L. & Soc. Change 727, 752 (2013) ("As registries expand, they become even less useful to both the public and law enforcement.").

Moreover, there is no evidence in the record that current statistics indicate all sex offenders generally pose a high risk of re-offending. *See Does #1-5 v. Snyder*,

834 F.3d 696, 704 (6th Cir. 2016) (noting the record provided "scant support for the proposition that SORA in fact accomplishes its professed goals" and that recent empirical studies cast significant doubt on the pronouncement in *Smith* that sex offenders' risk of recidivism is "frightening and high"). Because SORA does not provide a mechanism to evaluate a registrant's individual risk of recidivism, it "is not tied to the relative public safety risk presented by the particular registrants and is excessive with respect to the purpose for which it was enacted." *Letalien*, 985 A.2d at 30 (Silver, J., concurring); *see also Smith v. Doe*, 538 U.S. 84, 116 (2003) (Ginsburg, J., dissenting) (finding the scope of the Alaska Sex Offender Registration Act, ASORA, "notably exceeds" its legitimate civil purpose); *Doe v. State*, 189 P.3d 999, 1017 (Alaska 2008) (finding ASORA's broad scope significant where the Act "provides no mechanism by which a registered sex offender can petition the state or a court for relief from the obligations of continued registration"). Thus, the registry fails to promote the State's legitimate interest. We therefore hold SORA's lifetime registration requirement is unconstitutional absent any opportunity for judicial review to assess the risk of re-offending.[1]

We recognize the development of a judicial review process is a matter best left to the General Assembly. *See Moseley v. Welch*, 209 S.C. 19, 26–27, 39 S.E.2d 133, 137 (1946) ("The supreme legislative power of the State is vested in the General Assembly."); *see also State v. Bani*, 36 P.3d 1255, 1268 (Haw. 2001) ("[T]he difficult and sensitive task of reaching an accommodation between the State's substantial interest in requiring sex offender registration and notification, on the one hand, and an offender's legitimate interest in ensuring against erroneous deprivation of his or her liberty interest, on the other, is best left, in the first instance, to the legislature."); *Doe v. State*, 111 A.3d 1077, 1101 (N.H. 2015) (noting the specifics of a judicial review process for sex offenders requires "line-drawing" which is "a task for the legislature"). To be sure, the General Assembly has ably established judicial review in the sex offender context before, and such procedures do not impede the legitimate goals of the legislation. *See* S.C. Code Ann. § 23-3-540(H) (2007 & Supp. 2020) (outlining the process by which a person may be released from SORA's satellite monitoring requirements); *id.* §§ 44-48-110 to -130 (2018) (providing a petition process for sexually violent predators to be released from commitment). Therefore, we are confident in the General Assembly's ability to fulfill our request to fashion the particulars of the hearing process. Nevertheless, we require the hearings at which sex offenders may demonstrate they no longer pose a

---

[1] To the extent this opinion conflicts with *Hendrix v. Taylor*, 353 S.C. 542, 579 S.E.2d 320 (2003), it is hereby overruled.

risk sufficient to justify continued registration be conducted with reasonable promptness and meet standards of fundamental fairness.

In this case, Respondent was afforded a hearing on March 26, 2019 during which the circuit court assessed Respondent's risk of re-offending and determined he no longer poses a risk sufficient to justify his continued registration as a sex offender. As a result, the court ordered Respondent's removal from the sex offender registry. After more than ten years of registration, we find Respondent was provided an opportunity for judicial review sufficient to satisfy due process. *See, e.g.*, *id.* § 23-3-540(H) ("Ten years from the date the person begins to be electronically monitored, the person may petition . . . for an order to be released from the electronic monitoring requirements of this section."). We note, however, that the hearing afforded to Respondent in this case is by no means the only acceptable process. Accordingly, we affirm the circuit court's decision ordering Appellants to immediately remove Respondent from the sex offender registry.

Appellants also contend the circuit court erred in finding section 23-3-490 of the South Carolina Code (2007 & Supp. 2020) does not authorize publication of the State's sex offender registry on the internet.[2] The statute provides for public inspection of the sex offender registry by allowing the public to request and receive a list of all registered sex offenders in the state, a list of those in a particular geographic area, or information regarding a specific registrant. S.C. Code Ann. § 23-3-490(A)–(B) (2007 & Supp. 2020). In particular, subsection (E) of the statute provides, "[f]or purposes of this section, use of computerized or electronic transmission of data or other electronic means or similar means is permitted." *Id.* § 23-3-490(E). The parties dispute whether the language of subsection (E) allows Appellants to publish the sex offender registry on an internet website.

Specifically, Respondent argues "transmission" is not synonymous with the "publication" of registry information, and if the legislature had intended to allow the latter, it would have done so expressly. In fact, the term "publication" is used only

---

[2] The General Assembly has permitted Appellants—specifically SLED—to promulgate regulations to implement the provisions of SORA, and SLED acknowledges in its regulations that it may only disseminate registry information in accordance with adopted state law. *See* S.C. Code Ann. § 23-3-420 (2007 & Supp. 2020) ("The State Law Enforcement Division shall promulgate regulations to implement the provisions of this article."); S.C. Code Ann. Regs. 73-230(A) (2012) ("Information maintained in the Registry will be disseminated in accordance with adopted state law.").

in the section of the statute requiring sheriffs to provide the sex offender registry to a newspaper. *Id.* § 23-3-490(A) ("The sheriff must provide to a newspaper with general circulation within the county a listing of the registry for publication."). Appellants, on the other hand, assert the language of subsection (E) sufficiently authorizes the transmission of registry information to requestors through the internet. Indeed, Appellants contend their interpretation of subsection (E) is supported by the General Assembly's enactment of subsection 23-3-535(F)(1)(b) (Supp. 2020), which requires school districts to provide a hyperlink to the sex offender registry website on the school district's website, because it arguably demonstrates the legislature's intent to permit publication of the registry on the internet. Moreover, Appellants argue they are required to make registry information available on the internet pursuant to federal law.[3]

We find both parties' interpretations of subsection (E) equally plausible, indicating the language is ambiguous and does not clearly provide whether use of

_____

[3] In 2006, Congress enacted SORA's federal counterpart, the Sexual Offender Registration and Notification Act ("SORNA"), 34 U.S.C.A. §§ 20901-20962 (2019), which contains a provision seeking to require states to make their sex offender registries available to the public on the internet. *Id.* § 20920(a) ("[E]ach jurisdiction shall make available on the Internet, in a manner that is readily available to all jurisdictions and to the public, all information about each sex offender in the registry. The jurisdiction shall maintain the Internet site in a manner that will permit the public to obtain relevant information for each sex offender by a single query for any given zip code or geographic radius set by the user.").

However, we do not believe this provision of SORNA is dispositive of the statutory interpretation issue before the Court. Indeed, the federal law does not require states to implement its provisions because it was enacted pursuant to Congress's spending power by placing conditions on the receipt of federal funds. *See* 34 U.S.C.A. § 20927(a) (2019) ("[A] jurisdiction that fails, as determined by the Attorney General, to substantially implement this subchapter shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction . . . ."); *Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) (noting SORNA does not require the states to comply with its directives but rather gives states a choice whether to do so or risk losing a portion of their funding). Therefore, we find Appellants' reliance on the federal statute fails to support their argument that they are authorized to disseminate registry information on the internet regardless of whether SORA permits them to do so.

the internet for dissemination of registry information is permitted. *Compare Pennsylvania v. Williams*, 832 A.2d 962, 980 (Pa. 2003) (holding the statute's provision allowing for dissemination of sex offender registry information "by electronic means" did not authorize public display of the information on the internet but instead permitted "electronic transmission (for example, by email or fax machine) to an individual who lodges a specific request for the data"), *superseded by statute*, 42 Pa. Cons. Stat. § 9799.28 (2015), *with* Christina Locke & Bill F. Chamberlin, *Safe from Sex Offenders? Legislating Internet Publication of Sex Offender Registries*, 39 Urb. Law. 1, 11 (2007) (construing statutes in Michigan and South Carolina, which use less direct language such as "computerized means," to permit the dissemination of registry information on the internet). We are therefore required to apply the rules of statutory interpretation in order to discover the legislature's intent. *See Cain v. Nationwide Prop. & Cas. Ins. Co.*, 378 S.C. 25, 30, 661 S.E.2d 349, 352 (2008) ("[W]hen a plain reading of the statute 'lends itself to two equally logical interpretations, this Court must apply the rules of statutory interpretation to resolve the ambiguity and to discover the intent of the General Assembly.'" (quoting *Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001))).

To resolve the ambiguity in the statute, we review the legislative history of section 23-3-490. *See Limehouse v. Hulsey*, 404 S.C. 93, 106, 744 S.E.2d 566, 573 (2013) ("[A]s the rules of statutory construction dictate, it is also necessary for courts to consider the legislative history in order to effectuate the purpose of the statute."); *Kennedy*, 345 S.C. at 348, 549 S.E.2d at 247 ("Where the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself."). In 1998, the South Carolina General Assembly passed Act 384, which, among other amendments, added subsection (E) to section 23-3-490. *See* Act. No. 384, § 1, 1998 S.C. Acts 2310. When subsection (E) was first enacted, subsection (A) required the person requesting the information to provide his name in the request and permitted the information to be disclosed only to the person making the request. *Id.* at 2308 ("A sheriff must release information regarding a specific person who is required to register under this article to a member of the public if the request is made in writing, on a form prescribed by SLED, *stating the name of the person requesting the information*, and the name or address of the person or persons about whom the information is sought. *The information must be disclosed only to the person making the request*. (emphasis added)).

However, when the General Assembly amended section 23-3-490 in 1999, the requirements that the requestor provide his name in the request and that the

information be disclosed only to the individual requestor were removed from subsection (A), while subsection (E) remained in its original form. *See* Act No. 110, § 2, 1999 S.C. Acts 1141. We find this amendment evinces the legislature's intent for subsection (E) to broaden electronic dissemination of registry information to the public. We also find persuasive the General Assembly's acknowledgement of Appellants' use of the internet to disseminate the State's sex offender registry to the public in subsection 23-3-535(F)(1)(b), which was enacted in 2008—ten years after the addition of subsection 23-3-490(E). *See* Act No. 333, § 1, 2008 S.C. Acts 3299–3300. Accordingly, we hold subsection 23-3-490(E) permits the use of the internet to disseminate sex offender registry information to the public.[4]

---

[4] We note, however, that a majority of jurisdictions specifically require dissemination of sex offender registry information on the internet by statute. *See* Ala. Code § 15-20A-8(a) (2018); Alaska Stat. § 18.65.087(a) (2020); Ariz. Rev. Stat. Ann. § 13-3827 (2010 & Supp. 2020); Ark. Code Ann. § 12-12-913(j)(1)(C) (2016 & Supp. 2019); Cal. Penal Code § 290.46 (West 2014 & Supp. 2021); Colo. Rev. Stat. § 16-22-111 (2020); Conn. Gen. Stat. § 54-258(a)(1) (2021); Del. Code Ann. tit. 11, § 4336(p) (2015); Fla. Stat. § 775.21(7)(c) (2020); Ga. Code Ann. § 42-1-12(i)(3)(E) (2014 & Supp. 2020); Haw. Rev. Stat. § 846E-3(f) (2014); Idaho Code § 18-8323(1) (2016); 730 Ill. Comp. Stat. Ann. 152/115 (West 2018); Ind. Code § 36-2-13-5.5 (Supp. 2013); Kan. Stat. Ann. § 22-4909 (2007 & Supp. 2020); Ky. Rev. Stat. Ann. § 17.580 (LexisNexis 2019); Me. Rev. Stat. Ann. tit. 34-A, § 11221(9)(A) (2010 & Supp. 2021); Md. Code Ann., Crim. Proc. § 11-717(b) (LexisNexis 2018); Mass. Ann. Laws ch. 6, § 178D (LexisNexis 2011 & Supp. 2021); Mich. Comp. Laws Ann. § 28.728 (West 2020 & Supp. 2021); Minn. Stat. § 244.052 (2020); Miss. Code Ann. § 45-33-49(4)(b)(i) (2015); Mo. Rev. Stat. § 43.650 (2016 & Supp. 2020); Nev. Rev. Stat. § 179B.250 (2019); N.H. Rev. Stat. Ann. § 651-B:7(IV)(a) (2016); N.J. Stat. Ann. § 2C:7-13 (West 2015); N.M. Stat. Ann. § 29-11A-5.1(E) (2020); N.Y. Correct. Law § 168-q (McKinney 2014 & Supp. 2021); N.C. Gen. Stat. § 14-208.15(b) (2019); Ohio Rev. Code Ann. § 2950.13(A)(11) (West 2020); S.D. Codified Laws § 22-24B-21 (2020); Tenn. Code Ann. § 40-39-206(d) (2019); Tex. Code Crim. Proc. Ann. art. 62.005 (West 2018 & Supp. 2019); Utah Code Ann. § 77-41-110 (LexisNexis 2017); Vt. Stat. Ann. tit. 13, § 5411a (2018); Va. Code Ann. § 9.1-913 (2018 & Supp. 2020); Wash. Rev. Code § 4.24.550(5)(a) (2019); W. Va. Code Ann. § 15-12-2(h) (LexisNexis 2019); Wis. Stat. § 301.46(5n) (2019–2020); Wyo. Stat. Ann. § 7-19-303(c)(iii) (2019).

## IV. CONCLUSION

Although we find the State has a legitimate interest in requiring sex offender registration and such registration is constitutional, SORA's requirement that sex offenders must register for life without any opportunity for judicial review violates due process because it is arbitrary and cannot be deemed rationally related to the General Assembly's stated purpose of protecting the public from those with a high risk of re-offending. Therefore, we hold SORA's lifetime registration requirement is unconstitutional absent any opportunity for judicial review to assess the risk of re-offending. We further hold subsection 23-3-490(E) permits dissemination of the State's sex offender registry information on the internet. We hereby reserve the effective date of this opinion for twelve (12) months from the date of filing to allow the General Assembly to correct the deficiency in the statute regarding judicial review. Nonetheless, because the circuit court has already held a hearing in this case and determined Respondent no longer poses a risk sufficient to justify his continued registration as a sex offender, Appellants shall immediately remove Respondent from the sex offender registry.[5]

**AFFIRMED AS MODIFIED IN PART AND REVERSED IN PART.**

**KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**

---

[5] Appellants also challenge the circuit court's holdings regarding Respondent's claims under the Eighth Amendment, the Equal Protection Clause, and the Ex Post Facto Clause. We decline to address Appellants' remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues when disposition of a prior issue is dispositive); *see also In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) ("[I]t is this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required.").